**RAILROAD POLICEMEN'S BENEVOLENT ASSOCIATION, STATE OF NEW YORK, INC., Sean McLaughlin, Detective, Gilbert Machedo, Detective, Melvin Petty, Police Officer, Canine Unit, Robert Jackson, Detective, James Cleary, Police Officer, Canine Unit, John Pagroni, Police Officer, Canine Unit, William Herlihy, Detective, and All Others Similarly Situated, Plaintiffs,**

v.

**METRO NORTH COMMUTER RAILROAD, Metro North Commuter Railroad Police Department, Defendants.**

No. 86 Civ. 9352 (MEL).

United States District Court,
S.D. New York.

Jan. 28, 1987.

Sam Polur, Bronx, N.Y., for plaintiffs.

Mary Ann Mills, New York City, for defendants.

LASKER, District Judge.

Plaintiff, the Railroad Policemen's Benevolent Association, State of New York ("RPBA") moves for a preliminary injunction to restrain the defendants, Metro North Commuter Railroad and the Metro North Commuter Railroad Police Department, from allegedly violating the collective bargaining agreement between plaintiffs and defendants by assigning to civilians duties normally performed by railroad police officers.

The standard for the issuance of a preliminary injunction in this Circuit requires proof of

(a) irreparable harm and (b) either (1) likelihood of success on the merits or (2) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly toward the party requesting the preliminary relief.

*Jackson Dairy, Inc. v. H.P. Hood & Sons,* 596 F.2d 70, 72 (2d Cir.1979). The RPBA's showing does not meet this test.

■ First, the RPBA has made no showing of irreparable harm. The use of civilian employees in question, which involved the enlistment of a small group of signal and operating personnel to help railroad police with an undercover operation of a technical nature, lasted for only two weeks. The civilian personnel, having completed their task, have now returned to their normal duties.[1] Hence, the alleged violation of the collective bargaining agreement has ceased, and the RPBA can be adequately compensated by money damages if it should later prevail on its claims.

■ Second, the RPBA has not made a sufficient showing of either likelihood of success on the merits or sufficiently serious questions going to the merits to make them a fair ground for litigation. Under the Railway Labor Act, disputes between carriers and unions are characterized as either "major" or "minor". *See Local 553, Transport Workers Union v. Eastern Air Lines, Inc.,* 695 F.2d 668, 673 (2d Cir.1982). In a major dispute, one which involves a proposed change by the carrier in the collective bargaining agreement, either party may seek injunctive relief in federal court. In a minor dispute, one which arises out of the application and interpretation of the existing collective bargaining agreement, both parties must submit to binding "adjudication" by the appropriate Railway Adjustment Board. *See Air Line Pilots Association v. Trans World Airlines, Inc.,* 713 F.2d 940, 947–48 (2d Cir.1983), *aff'd in part and rev'd in part on other grounds sub nom., Trans World Airlines, Inc. v. Thurston,* 469 U.S. 111, 105 S.Ct. 613, 83 L.Ed.2d 523 (1985); *Local 553,* 695 F.2d at 674–75. The test whether a dispute is "major" or "minor" inquires

whether a plausible interpretation [of the collective bargaining agreement] would justify the carrier's action. A dispute is major if the carrier's contractual justification for its actions is 'obviously insubstantial.' On the other hand, a dispute is minor if the contract is 'reasonably susceptible' to the carrier's interpretation.

*Air Line Pilots Association,* 713 F.2d at 948 (quoting from *Local 553,* 695 F.2d at 673 (citations omitted)). When there is

1. *See* Affidavit of John V. Esposito in Support of Memorandum In Opposition, ¶¶ 8–11 (Jan. 13, 1987).

doubt as to whether the agreement arguably supports the carrier's action, the practical effects of the carrier's actions on working conditions must be examined to determine whether the magnitude of the disruption is "major" in a literal sense. *Air Line Pilots Association,* 713 F.2d at, 948; *Local 553,* 695 F.2d at 674.

In this case, the unchallenged evidence indicates that the dispute at hand is a minor one which must be determined by the Railway Adjustment Board rather than by a court. The "scope" provision of the agreement between the RPBA and Metro North, which the RPBA alleges has been violated, provides that

> all functions and duties normally and historically performed by officers covered by this Agreement shall at all times continue to be performed by officers covered by this Agreement at all existing or new locations.[2]

Defendants' argument that the limited, temporary use of civilian employees which they have made for technical consultations is not a breach of this provision because it does not involve a function normally and historically performed by police officers is certainly not "obviously insubstantial." Nor does the evidence suggest that the use of these civilian employees for a two week period caused a major disruption of working conditions.

Moreover, even if this dispute were properly before this court, it would probably be necessary to deny the motion. On the record to date, the RPBA has failed to demonstrate that Metro North's use of civilian employees violated the scope clause of the collective bargaining agreement because it appears that the work done by the civilians was not of a type normally and historically performed by the railroad police.

In sum, first, there is no showing of irreparable harm. Second, both because the dispute is "minor" and therefore subject to binding "adjudication" by the Rail-

way Adjustment Board and because there is insufficient evidence to establish that the scope agreement has been violated, the RPBA has not made a showing of likelihood of success on the merits or of sufficiently serious questions going to the merits to make them a fair ground for litigation.

Accordingly, the motion for preliminary injunction is denied.

It is so ordered.

---

**2.** Plaintiff's Exhibit, Agreement Between Metro-North Commuter Railroad Company and United Federation of Police Officers Representing Police Officers Below the Rank of Captain, Employees of Metro-North Commuter Railroad Company, p. 1.