**AMERICAN ASSOCIATION OF RETIRED PERSONS, et al., Plaintiffs,**

v.

**FARMERS GROUP, INC., et al., Defendants.**

**No. CV–86–6203 TJH (GX).**

United States District Court, C.D. California.

Sept. 22, 1988.

STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSIONS OF LAW

HATTER, District Judge.

## UNCONTROVERTED FACTS

### A. PROFIT SHARING PLAN

1. Individual plaintiffs are 30 current or former employees of Farmers Group, Inc. and its affiliated companies ("Farmers") who continued to work at Farmers beyond their 65th birthdays. PX 27.[1] Before plaintiffs reached age 65, they received their full share of profits under the Profit Sharing Plan. *Id.* After plaintiffs reached age 65, they did not receive additional profit sharing contributions or allocations of forfeitures under the plan during their employment with Farmers. Answer, ¶ 12; Foster Dep. at 15.

2. Under the terms of the Profit Sharing Plan, Farmers makes periodic contributions to the plan's Trust Fund from its profits for the benefit of the plan's participants. Answer, ¶ 10. The plan administrator maintains an individual profit-sharing account for each eligible employee. *Id.* The balances in the accounts reflect the participants' individual shares of the periodic contributions by Farmers, as well as an allocation of forfeitures and investment earnings. *Id.;* Foster Dep. 15. Since the 1970s eligible participants have received each year into their account an amount equal to approximately 15% of their salary. PX 27; DiFonso Dep. 17.

3. In addition to the annual contributions, participants also receive an annual allocation of forfeitures. A forfeiture occurs when an employee leaves the company prior to vesting and the account balance is redistributed to vested employees. PX 4AA–Art. VI. Finally, the participants are credited with investment earnings on the balance in the individual's account. Foster Dep. 14.

4. After five years in the plan, participants are provided annual cash distributions equal to 20% of the balances in their accounts. Foster Dep. 17–18; Answer, ¶ 11. To prevent the 20% annual distribution, the individual is required to make an election that some or all of the distribution be deferred. *Id.* Even if an election is made to defer the annual distribution, the amounts may subsequently be distributed in the event of financial need. *Id.* Only about 10% of the participants actually elect to defer the cash distributions. PX 2 at Exh. F.

5. After an employee has reached age 65, Farmers excludes the employee from receiving any additional contributions or allocation of forfeitures, even though the individual continues to be employed. Answer, ¶ 12.

6. Section 7.4 of the Profit Sharing Plan provides:

> A Participant who remains on the payroll of any of the Companies after normal retirement date shall not be credited with contributions provided by Article III nor be credited for forfeitures under Article VI.

PX 4–AA, sec. 7.4.

7. The effect of section 7.4 is to decrease the compensation paid to employees age 65 and over. Darvin Dep. 15–17.

8. Prior to 1976, section 7.4 of the Profit Sharing Plan did not exist. It was first inserted into the plan by means of a December 20, 1976 amendment to the plan. The 1976 version of section 7.4 did not permit distribution of the account balances

---

1. Plaintiffs' Exhibits (PXs) are attached to the Declaration of Thomas R. Gibbon. Deposition extracts are also attached to the Gibbon Declaration.

of employees age 65 and over until they actually retired. PX 4–T, sec. 7.4.

9. In 1982, Farmers amended section 7.4 of the Profit Sharing Plan to permit a lump sum distribution of the account at age 65, regardless of the date of retirement. The 1982 plan amendment also shortened the alternative payout period from 15 years from the date of retirement to five years. PX 4–W.

10. Since the adoption of section 7.4 in late 1976, defendants had numerous internal discussions about whether Farmers should change its treatment of employees age 65 and over under the Profit Sharing Plan. Darvin Dep. 52; DiFonso Dep. 57–58.

11. In response to the 1978 ADEA amendments prohibiting mandatory retirement at age 65, David Darvin, Farmers Vice–President of Personnel and member of the committee charged with administering the Deferred Profit Sharing Plan, requested on June 1, 1978 that the Company receive informed outside legal counsel's opinion on whether Farmers could exclude employees over age 65 from the Profit Sharing Plan. PX 7; Darvin Dep. 6–8. Without waiting for the opinion, Farmers issued a Bulletin which announced the new company policy that employees could continue their employment beyond age 65, but that they would not be credited with contributions or forfeitures to the Profit Sharing Plan. PX 8. A week after the Bulletin, the Company received the opinion from outside counsel. It stated that there was "no specific statutory provision authorizing the [age–65 profit sharing] exclusion." PX 9.

12. In April, 1979, the issue was raised again when Mr. Darvin received a memorandum from Mr. Nikolai, Director of Equal Employment Opportunity and an employee Mr. Darvin relied on in these areas. Darvin Dep. 77; Nikolai Dep. 6. The memo concluded that under Department of Labor regulations, "it would not appear we could continue to exclude employees over 65 from participation in further contributions to the Deferred Profit Sharing Plan, since this does not involve cost considerations based on age." PX 10. Two months

later, Farmers' inside counsel informed Farmers' Personnel Department that, "consistent with Department of Labor's standing interpreparation of the ADEA," the DOL Interpretative Bulletin required contributions to be continued for employees who worked past normal retirement age and were covered by a "supplemental" defined contribution plan. PX 11.

13. Subsequently, Farmers sought advice from different outside counsel (PX 13) and, based on that advice, twice unsuccessfully attempted to challenge through lawsuits the provisions of the DOL Interpretative Bulletin which required continued contributions for supplemental plans. *Farmers Group, Inc. v. Marshall*, No. 80–2110 (D.C.Cir., dismissed Nov. 5, 1981) and *Farmers Group, Inc. v. Thomas*, No. 84–1457 (D.D.C., dismissed May 3, 1985).

14. There are no age-related cost considerations justifying the difference in treatment under the Profit Sharing Plan between employees under age 65 and employees over age 65. Since Profit Sharing Plan contributions are based upon a strict percentage of salary, it would cost no more to fund the Profit Sharing contribution to an older employee than to a younger employee with the same salary. Foster Dep. 56–57.

## B. PENSION PLAN

15. The Pension Plan is a defined benefit plan which pays a monthly benefit for life based upon a formula which multiplies a percentage of the individual's average monthly compensation times years of credited services. Answer, ¶ 16; PX 5–0, § 5.1; *see id.*, §§ 2.5, 2.11.

16. Before plaintiffs reached age 65, they received their full benefit accruals under the Pension Plan. Answer ¶ 16. After employees reach age 65, they no longer are given service or salary credit for purposes of computing the monthly retirement benefit. Answer ¶ 16; PX 5–H, §§ 2.19(c), 2.25(c), 3.3(c); PX 5–0, §§ 2.20(c), 2.26(c), 3.3(c). Thus, the benefit under the Pension Plan is frozen at age 65. Answer, ¶ 17. Payment of this frozen benefit is commenced not when the individual reaches

normal retirement age of 65, but only when the employee actually terminates service. PX 5–H, Sec. 5.10; PX 5–0, § 5.11.

17. No actuarial increase is provided to compensate for the pension payments which are suspended during the employee's post–65 employment. Answer ¶ 17. Employees working beyond age 65 receive a reduction in actuarily projected lifetime pension benefit payments in comparison with those actually projected if employment beyond age 65 had not occurred. *Id.*

18. The Pension Plan provisions which excluded employees age 65 and over from continued pension accruals were first adopted on August 4, 1978. *Compare* PX 5–H with PX 20; DiFonso Dep. 34–50. The changes were prompted by the 1978 amendments to the ADEA which prohibited mandatory retirement before age 70. In a May 22, 1978 memorandum, Farmers' in-house counsel T. Hoffman (counsel of record in the instant case) recommended that the Pension Plan should be amended to freeze benefit accruals at the normal retirement age. PX 6. A month later, without amending the Pension Plan, Farmers issued a Bulletin to all employees announcing that if employees continued to work beyond age 65, Farmers would withhold the pension until actual retirement, it would deny credit for years of service or salary after age 65 in determining the amount of the pension, and it would not provide an actuarial equivalent at retirement. PX 8.

19. Defendants have presented no age-related cost considerations justifying the difference in treatment under the Pension Plan between employees over age 65 and employees under age 65.

## CONCLUSIONS OF LAW

1. The Court has jurisdiction of this action pursuant to 29 U.S.C. §§ 626, 1132, and 28 U.S.C. § 1331.

█ 2. Defendants' denial of profit sharing contributions and forefeiture allocations and denial of pension plan benefit accruals (service and salary credit) to employees who have reached age 65 are *per se*

violations of Section 4(a) of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 623(a). *Trans World Airlines, Inc. v. Thurston,* 469 U.S. 111, 121, 105 S.Ct. 613, 621, 83 L.Ed.2d 523 (1985); *EEOC v. Borden's, Inc.,* 724 F.2d 1390, 1393 (9th Cir.1984).

3. Defendants' profit sharing plan is not the type of plan subject to the "bona fide employee benefit plan" exception in ADEA Section 4(f)(2), 29 U.S.C. § 623(f)(2). *Borden's,* 724 F.2d at 1395–96; *EEOC v. Westinghouse Electric Corp.,* 725 F.2d 211, 224 (3d Cir.), *cert. denied,* 469 U.S. 820, 105 S.Ct. 92, 83 L.Ed.2d 38 (1984).

4. Defendants' actions in denying profit-sharing contributions and forefeiture allocations and in denying pension plan benefit accruals to employees beyond age 65 are not protected by ADEA Section 4(f)(2). Defendants' actions are a "subterfuge to evade the purposes of" the ADEA because they are not justified by age-related cost considerations. *Borden's,* 724 F.2d at 1396; *EEOC v. City of Mt. Lebanon,* 842 F.2d 1480, 1493–94 (3d Cir.1988); *Karlen v. City Colleges of Chicago,* 837 F.2d 314, 319 (7th Cir.), *cert. denied,* —— U.S. ——, 108 S.Ct. 2038, 100 L.Ed.2d 622 (1988).

█ 5. Defendants' violation of the ADEA with respect to the profit sharing plan is "willful" within the meaning of 29 U.S.C. § 626(b). *Thurston,* 469 U.S. at 128, 105 S.Ct. at 625; *Cassino v. Reichhold Chemicals, Inc.,* 817 F.2d 1338, 1348 (9th Cir.1987).

█ 6. Defendants' denial of profit sharing contributions and forefeiture allocations to employees beyond age 65 violates Section 202(a)(2) of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1052(a)(2).

7. Defendants' denial of actuarial increases to pension plan benefits of employees beyond age 65 constitutes an impermissible forfeiture of benefits in violation of Section 203(a) of ERISA, 29 U.S.C. § 1053(a).

IT IS SO ORDERED:

ORDER AND JUDGMENT

Upon consideration of defendants' motion for summary judgment and plaintiffs' cross-motions for partial summary judgment on liability and associated motions, and in accordance with the Statement of Uncontroverted Facts and Conclusions of Law filed concurrently herewith, it is ORDERED and ADJUDGED that:

1. Defendants' motion for summary judgment is denied.

2. Plaintiffs' motion for partial summary judgment is granted under the Age Discrimination in Employment Act and the Employee Retirement Income Security Act on plaintiffs' claims with respect to both defendants' Profit Sharing Plan and Pension Plan. With respect to the Profit Sharing Plan, summary judgment is granted against defendants on the issue of "willfulness" under 29 U.S.C. § 626(b).

3. Defendants' motion to strike the declaration of Virginia Gould is denied on the basis that the challenged statements are admissible under Rule 801(d)(2)(D) of the Federal Rules of Evidence.

4. Plaintiffs' motion to strike the declaration of Larry Heimsoth is granted, Fed. R.Civ.P. 56(e).

5. Plaintiffs' motion for sanctions is denied for insufficient basis on this record.

6. The Court retains jurisdiction to determine the amount of plaintiffs' damages and all other issues not resolved by the grant of plaintiffs' cross-motions for partial summary judgment.

IT IS SO ORDERED: