867 F.2d 611
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Thomas C. SPANN, Jr., Plaintiff-Appellant,
v.
ANN ARBOR PUBLIC SCHOOLS, Defendant-Appellee.
 No. 87-1504.
 United States Court of Appeals, Sixth Circuit.
 Jan. 30, 1989.
 
 Before BOYCE F. MARTIN, Jr., NATHANIEL R. JONES and ALAN E. NORRIS, Circuit Judges.
 PER CURIAM.
 
 
 1
 Plaintiff-appellant, Dr. Thomas C. Spann, Jr., appeals from the district court's order granting summary judgment in favor of the defendant in this employment discrimination case brought pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. Sec. 2000-e et seq. (1982). Because we conclude that the district court's judgment is supported by ample evidence in the record, we affirm.
 
 I.
 
 2
 The plaintiff, a black male, worked for the Ann Arbor Public Schools in an administrative position as an Assistant Class Principal from 1972 until he was discharged in June, 1977. He was fired from his Assistant Class Principal position after a full hearing before the School Board. Although Spann was fired as an administrator, he was offered a teaching position by the Ann Arbor school district ("District"). The District dispatched letters to Spann in July and August 1977 requesting that he contact the District for a teaching position at the Bryant Elementary School. Spann did not respond to the assignment notices but rather accepted a position as an Assistant to the Principal with the Fort Wayne, Indiana Schools. Spann, however, claims that he did not receive notice from Ann Arbor until November 18, 1977, when he informed the District that he would accept placement for the following year if he was granted a leave of absence for the 1977-78 academic year. The request for leave was denied and Spann has not worked for the District since 1977. He testified that he had continuously applied for jobs with the District since January 1978.
 
 
 3
 Spann has filed multiple grievances against the District. His first charge against the District, filed in 1975 with the Michigan Department of Civil Rights, alleged discrimination because of his race. Subsequent complaints, including this instant action, have alleged that the District discriminated and retaliated against him for filing prior complaints. In 1981, he filed a lawsuit in the United States District Court for the Eastern District of Michigan, Judge Charles Joiner presiding, which he amended in 1982 and added additional allegations based on Title VII of the Civil Rights Act of 1964, 42 U.S.C. Sec. 2000-e et seq. and allegations that the District systematically retaliated against him by disseminating negative references to prospective employers which implied that he was a homosexual. On August 19, 1982, the district court dismissed the Title VII claim for lack of jurisdiction and the defamation claim because Spann failed to allege the publication of any statements which were not barred by the one year statute of limitations.
 
 
 4
 On March 26, 1984, plaintiff filed this instant action against the District, the Beulah Missionary Baptist Church ("Church"), and five individual church members. In his complaint Spann alleged that the terms and conditions of his employment at the District violated Title VII, 42 U.S.C. Sec. 1983 and Michigan's Elliott-Larsen Civil Rights Act, M.C.L. 37.2101, et seq., M.S.A. 3.548(101), et seq. In addition, he also claimed that after he sought reinstatement in 1983 in Ann Arbor, he was rejected in retaliation for his prior engagement in civil rights litigation against the District. Further, Spann alleged that the District supplied defamatory information to members of the church where he was pastor until his removal in 1982. Finally, Spann alleged that although the District offered him reinstatement the contract was later breached.
 
 
 5
 On November 5, 1986, the district court granted pretrial summary judgment to Ann Arbor and dismissed Spann's racial discrimination claims and his claims based on retaliation except for the claims relating to Ann Arbor's failure to rehire him after he applied for job openings in January of 1983.
 
 
 6
 On April 24, 1987, the district court granted the District's second motion for summary judgment and dismissed the remaining discrimination claims. The district court found that as to every position for which Spann made out a prima facie case of discrimination, the District articulated a legitimate non-discriminatory reason for its actions or demonstrated that no hiring decision had been made. The district court concluded that since Spann failed to show that the District's motives were pretextual, he failed to establish his case of discrimination in hiring.
 
 II.
 
 7
 We review a district court's grant of summary judgment de novo. Pinney Dock and Transport Co. v. Penn Cent. Corp., 838 F.2d 1445 (6th Cir.), cert denied, 109 S.Ct. 196 (1988). In a Title VII action, Spann has the ultimate burden of proving racial discrimination. Texas Dept. of Community Affairs v. Burdine, 450 U.S. 248 (1981). In a Title VII action based on discrimination in hiring, a plaintiff must establish a prima facie case of discrimination by showing 1) that he is a member of a protected class; 2) that he applied and was qualified for a job for which the employer was seeking applicants; 3) that he was rejected; and 4) that after the rejection, the employer continued to seek applicants with similar qualifications. McDonald Douglas Corp. v. Green, 411 U.S. 792, 802 (1973). The burden then shifts to the defendant who must articulate a legitimate, non-discrimintory reason for its actions. Finally, the plaintiff must show that the defendant's legitimate, non-discriminatory reason is a pretext for unlawful discriminatory conduct. Id. at 804. In pretext cases, the principal source of proof is circumstantial evidence. See Trans World Airlines v. Thurston, 469 U.S. 111, 121 (1985).
 
 
 8
 In the present case, Spann claims that he applied and was qualified for jobs with the District in 1983, and that he was rejected for those jobs because of racial animus and his prior civil rights charges against the District. The district court properly concluded that in five of the disputed hiring decisions, the District supplied either a legitimate non-discriminatory reason for its actions or there was no hiring decision. While noting that the District denied receiving any applications from Spann, the district court found that Spann was qualified to fill three positions that were open in the District in 1982-3 school year. When the burden of production shifted to the defendant, the district court found that the District's actions were predicated on legitimate, non-discrimintory reasons for not hiring Spann for the job openings for which he was certified and qualified from January 1983 to the end of the 1982-3 school year.
 
 
 9
 On appeal the defendant claims that Spann's qualifications and experience were irrelevant because they were contractually bound to place someone else in each of the three positions for which Spann applied from January 1983 to the end of the school year. Specifically, the District contends that the procedure for filling job vacancies, in 1983, was set forth in the collective bargaining agreement (the so-called "Master Agreement"). The Master Agreement provides, inter alia, that (1) individuals on a temporary contract will be given preference when filling any subsequent vacancies for which he/she is qualified and has an exemplary evaluation; and (2) teachers who have taken leave shall be returned to the same or substantially equivalent position with no loss of benefits at this end of the period of incapacity. The defendant contends that Spann could not be considered for three job openings in the District because the District was obligated to place persons returning from leave and on a temporary contract in those jobs.
 
 
 10
 In Goostree v. State of Tennessee, 796 F.2d 854 861 (6th Cir.1986), cert. denied, 480 U.S. 918 (1987), the court stated that "in establishing pretext, the plaintiff 'may succeed ... either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explantion is unworthy of credence.' " Id. (quoting Burdine, 450 U.S. at 256).
 
 
 11
 In Irvin v. Airco Carbide, 837 F.2d 724, 726 (6th Cir.1988), this court held that a plaintiff must do more than make "[d]isputations of ... facts underlying ... legitimate business reasons ..." Id. The Irvin court observed that conclusory and unsupported allegations are insufficient, that the plaintiff "must take the extra step of presenting evidence to show that the reasons given are an attempt to cover up the employer's alleged real discriminatory motive." Id. A review of the record does not support Spann's claim that reliance on the Master Agreement was pretextual. We agree with the district court's conclusion that Spann has failed to produce sufficient evidence to "demonstrate that the proffered reason was not the true reason for the employment decision." Burdine, 450 U.S. at 256. The extent of the evidence offered by Spann was an affidavit which denied the general factual elements supporting the District's proffered explanation for why he was not hired.
 
 
 12
 Rather than producing evidence directly challenging the legitimacy of the defendant's proffered reasons, Spann merely sought to refute reasons given by providing his own version of the facts. Because Spann has not come forward with sufficient evidence to show that a genuine issue of material fact existed with regard to the legitimacy of the reason advanced by the defendant, we accordingly affirm the district court's grant of summary judgment.
 
 III.
 
 13
 Spann also argues that the district court abused its discretion by denying his discovery requests until January, 1987. He contends that if his requests had been granted prior to the July 1986 hearing on the District's motion for summary judgment he would have been able to effectively defend against the motion, and the order granting partial judgment of the pendent claims would not have been entered. In support of this claim, Spann specifically alleges that subsequent to that order being entered, he discovered records disclosing evidence which supported the claims previously dismissed by the district court. He concludes, therefore, that the district court's failure to allow him discovery prior to the October 15, 1986 hearing constituted an abuse of discretion.
 
 
 14
 In general, the trial court has broad discretion in ruling on discovery requests. See Ghandi v. Police Department of Detroit, 747 F.2d 338 (6th Cir.1984) Furthermore, an order denying further discovery will be grounds for reversal "only if it was an abuse of discretion which resulted on substantial prejudice." Id. at 354. After carefully reviewing the record, we find that there is no merit to Spann's contention that the district court abused its discretion in dismissing his pendent claims without permitting him to engage in discovery. We also reject plaintiff's claim that the district court abused its discretion by denying Spann discovery on his non-pendent claims.
 
 IV.
 
 15
 Spann makes several other arguments in his brief. After reviewing those arguments and the record, we find those claims are without merit.
 
 V.
 
 16
 For all the foregoing reasons, the lower court's judgment is hereby AFFIRMED.