EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION,
Plaintiff,

v.

CARLTON CRUISES, INC., Defendant.

No. 90 Civ. 2850 (KTD).

United States District Court,
S.D. New York.

July 15, 1992.

Donald R. Livingston, Philip B. Sklover, James L. Lee and Anna M. Stathis, E.E.O.C., New York City, for plaintiff; Nora E. Curtin, of counsel.

Gern, Dunetz, Davison & Weinstein, New York City, for defendant; Jonathan J. Lerner, of counsel.

MEMORANDUM AND ORDER

KEVIN THOMAS DUFFY, District Judge:

Plaintiff, the Equal Employment Opportunity Commission (the "EEOC"), com-

menced this action under Title VII of the Civil Rights Act of 1964, as amended by the Equal Opportunity Act of 1972, 42 U.S.C. § 2000e, et seq. ("Title VII"), on behalf of Susan Stambules to recover damages against defendant Carlton Cruises, Inc. (the "Company"), a Delaware corporation which operates dinner cruises in Manhattan. The EEOC alleges that the Company discriminatorily terminated Stambules on the basis of her pregnancy. The EEOC now moves, pursuant to Fed.R.Civ.P. 56, for partial summary judgment as to the Company's liability.

Except where otherwise indicated, the following facts are not disputed and derive from the EEOC's Statement Pursuant to Local Rule 3(g) and the Company's Statement of Disputed Fact Pursuant to Local Rule 3(g). Stambules worked for the Company as a pastry chef. She was hired in May 1988 by the Company's Executive Chef, David Renner. Stambules' responsibilities included preparing desserts and occasionally running food to the dining area of the boat. Stambules Depo. at 39. Although the cruise season lasted from April 1 to December 31, Stambules, like the Company's other employees, received a salary and medical coverage for the full year.

In February 1989, Stambules and Renner met to discuss the 1989 season. At this meeting, they agreed that Stambules would continue her employment with the Company through the 1989 season.[1]

In April 1989, Stambules met with Dorothy Carlton, the Company's owner, to discuss Stambules' salary. At this meeting, Stambules told Carlton that she was pregnant and due in early November. Carlton congratulated Stambules and assured her that she still had a job. Carlton Depo. at 76–77. According to Carlton, before they ever addressed Stambules' salary for the 1989 season, Stambules became hostile about the maternity coverage offered under the Company's health policy, particularly with regard to circumcision. Id. at 79. Stambules' salary was never discussed.

After the meeting, Carlton had the Company's attorney draft an employment agreement (the "Agreement"), which included a "hold harmless" clause releasing Carlton, her husband, and the Company from any pregnancy-related injuries sustained by Stambules in the course of her employment with the Company. No other employee was asked to sign an employment agreement. Carlton Depo. at 97. Stambules refused to sign the Agreement because she wanted her lawyer to review it. Before she announced her decision as to the Agreement, however, Stambules learned from Renner that she was no longer employed by the Company. Stambules contacted Carlton, who confirmed the termination.

■■■ Summary judgment is proper only where the movant shows that there is no genuine issue of material fact, and that it is entitled to summary judgment as a matter of law. See Anderson v. Liberty Lobby, 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). In determining whether there is a genuine issue of material fact, the court must construe the evidence and draw all inferences in favor of the nonmovant. See United States v. Diebold, Inc., 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962). To defeat a properly asserted summary judgment motion, however, the nonmovant must demonstrate the existence of material issues of fact to be resolved at trial on the merits. Williams v. Smith, 781 F.2d 319, 323 (2d Cir.1986). In meeting its burden of proof, the nonmovant "must do more that simply show that there is some metaphysical doubt as to the material facts." Matsushita Electric Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986).

■■■ In Title VII discrimination cases, the plaintiff has the initial burden of establishing a prima facie case of discrimination. To meet this burden of proof as to the person allegedly discriminated against, the EEOC must show that: (1) she is a member of a protected group—in this case a female; (2) she met the qualifications for the position in question; (3) she was fired when her

1. The Company disputes Stambules' claim that she was formally rehired at this meeting.

superiors learned of her pregnancy; and, (4) the job remained open after her termination. *Bernard v. Ernst & Whinney*, No. 88–4028, 1990 WL 9280, at 5, 1990 U.S. Dist. LEXIS 915, at 6 (S.D.N.Y. January 30, 1990). Once the plaintiff makes such a prima facie showing, the defendant is entitled to a fair opportunity to show other legitimate, non-discriminatory reasons for the termination. The plaintiff is then given the opportunity to establish that the purportedly non-discriminatory reasons asserted by the defendant are merely pretext for discrimination. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 804, 93 S.Ct. 1817, 1825, 36 L.Ed.2d 668 (1973).

 The EEOC contends that there is an exception to this ordinary rule in that, here, the Agreement is direct evidence of sexual discrimination and that, by presenting such direct evidence, it has met its initial burden of proving a prima facie case of discrimination under Title VII. *See TWA v. Thurston*, 469 U.S. 111, 121, 105 S.Ct. 613, 621, 83 L.Ed.2d 523 (1985) To support this contention, the EEOC points to paragraph two of the Agreement, which states that the Company is aware of Stambules' pregnancy. The EEOC also cites paragraph four of the agreement, which conditions Stambules' continued employment on her signing a "hold harmless" clause in the event of a pregnancy-related injury. Given the language of the Agreement, it is likely that the Company was concerned with shielding itself from liability for pregnancy-related injuries suffered by Stambules during the course of her employment. However, such contractual terms do not constitute direct evidence of sexual discrimination based on pregnancy. Therefore, in order to establish the requisite prima facie case of a Title VII discrimination, the EEOC must still meet the four-part test enumerated above.

The EEOC adduces enough to show that Stambules is female, that her job remained open after her termination, and that she was qualified for her position with the Company. Under the third leg of the test, however, a material question of fact exists as to whether Stambules was terminated because she was pregnant or because of her personality. The defense submits that Stambules was terminated as a result of her poor attitude and insubordinate behavior. Carlton had received numerous complaints from her staff about Stambules' abusive behavior, and had the Agreement drafted only after witnessing Stambules' attitude. Carlton Depo. at 57, 62. Stambules admits that she yelled at staff members on occasion. Stambules Depo. at 44.

Given these contentions, it is apparent that there exist genuine factual issues as to whether Stambules was fired because of her pregnancy or because of her poor attitude and insubordinate behavior. For the foregoing reasons, the EEOC's motion for summary judgment is denied.

SO ORDERED.

