Sammie D. FELTON, Petitioner,

v.

EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, Respondent.

Appeal No. 87–3065.

United States Court of Appeals, Federal Circuit.

May 29, 1987.

Sammie D. Felton, pro se.

Richard K. Willard, Asst. Atty. Gen., David M. Cohen, Director, M. Susan Burnett and Gregory A. Harrison, Atty., Commercial Litigation Branch, Dept. of Justice, Washington, D.C., submitted for respondent. Thomas Schlageter, Office of Legal Counsel, E.E.O.C., Washington, D.C., of counsel.

Before NIES, Circuit Judge, NICHOLS, Senior Circuit Judge, and BISSELL, Circuit Judge.

BISSELL, Circuit Judge.

Sammie D. Felton (Felton) appeals from the final decision of the Merit Systems Protection Board (Board), Docket No. SL07528610052, 31 M.S.P.R. 481, sustaining her suspension for 30 days from a position with the Equal Employment Opportunity Commission (agency) on the basis that she had authorized a clerical employee to use a government-owned car for nonofficial purposes in violation of 31 U.S.C. § 1349(b) (1982). We reverse.

## BACKGROUND

The undisputed facts concerning an incident on June 12, 1984, which gave rise to the adverse action at issue, are:

> [O]n that morning, Ms. Mitchell, a Clerk-Typist in the Louisville Area Office in June, 1984, was on her way to work in her personal vehicle when it broke down on the expressway. She was picked up by an acquaintance and dropped off at her office. . . . [She] called a car dealership to have her car towed to be repaired. She then telephoned her supervisor, Ms. Felton, who was the Acting Area Office Director at that particular time. This occurred between 7:00 and 7:30 a.m., prior to the 8:00 a.m. regular starting time for the office.

> Ms. Mitchell asked Ms. Felton if she could utilize the government vehicle used by the Louisville Area Office in order to go back to her vehicle on the expressway and secure it. Ms. Felton . . . initially . . . misunderstood Ms. Mitchell, and thought Ms. Mitchell wanted to take the government car to her home. She . . . advised Ms. Mitchell that it was improper to do so. At that point, Ms. Mitchell explained she was not going to her home, but just going to secure her personal vehicle which had broken down on the expressway. . . . [A]lthough [Felton] normally considered such a request inappropriate, she believed that in order to make it more convenient for the office to have its only typist available to work, it would be to the government's benefit to allow Ms. Mitchell to utilize the government vehicle. Hence, Ms. Felton admitted she authorized Ms. Mitchell to utilize the car. Ms. Mitchell . . . took the government car and started toward the expressway when it also broke down. At that point, she called for assistance to get the government car towed and she also was picked up by an acquaintance who took her to her personal vehicle on the expressway.

Initial Decision at 2–3.

As a result of this incident, the agency charged Felton with "willful authorization of the use of a government vehicle for other than official purposes in violation of agency regulations, General Services Administration (GSA) regulations, and 31 U.S.C. § 638(c)(2)," [*] id. at 3–4, and imposed on Felton the minimum 30–day suspension required by law.

---

[*] Amended by Pub.L. 97–258, 96 Stat. 924 (September 13, 1982) and codified at 31 U.S.C. §§ 1344 and 1349(b) (1982).

At the hearing before the presiding official, Felton testified as to the reasons she believed that the emergency resulting from Mitchell's car problem necessitated authorization for Mitchell's use of the government vehicle: (1) Mitchell was the only typist in the office, (2) the caseload at that time was very heavy due to a large backlog, (3) it would be better for the office if Mitchell secured her personal vehicle as quickly as possible and returned to the office to do her work, and (4) thus, if Mitchell was going to be out of the office anyway to take care of her vehicle, she should be assisted so as to get it accomplished as expeditiously as possible; all of which showed that she (Felton) thoroughly considered the matter and did not evidence a reckless disregard as to whether the use of the government vehicle was for other than official purposes.

Based upon the foregoing, the presiding official found that: (1) Felton was aware of the impropriety of the use of a government vehicle for other than official purposes, *id.* at 8, (2) there was no doubt that Felton understood that Mitchell would use the government vehicle to drive to her personal vehicle on the expressway in order to secure it so that it could be towed for repair, and (3) this use was not for an official purpose. Thus, Felton was found to have knowingly, consciously, and willfully authorized Mitchell to use a government vehicle for other than an official purpose.

In sustaining the agency's action suspending Felton for 30 days, the presiding official found that the agency supported its charge against Felton by a preponderance of the evidence and that the penalty imposed was the minimum penalty that could be imposed within the tolerable limits of reasonableness.

This appeal followed the full Board's denial of Felton's petition for review of the presiding official's decision.

### OPINION

Section 1349(b) of Title 31, United States Code, provides in pertinent part:

An officer or employee who willfully uses or authorizes the use of a passenger motor vehicle ... owned ... by the United States Government (except for an official purpose authorized by section 1344 of this title) ... shall be suspended without pay by the head of the agency.

Felton contends that (1) it was impossible for the presiding official to find that she violated the statute because she "believed" her authorization was proper, right, or justified, and (2) her authorization was for an "official" purpose since it provided an arguable "benefit" to the government. The agency contends that these arguments are without foundation as the inquiry is not whether Felton intended to violate the statute but instead whether she intended to do the act that violated the law.

■ The Board has consistently interpreted the term "willfully" in section 1349(b) to mean that a supervisor must "voluntarily and consciously" authorize an employee to use a government-owned vehicle with knowledge of or reckless disregard for whether the employee's intended use was for other than official purposes. *See Cottman v. Department of Labor,* 23 M.S.P.R. 688, 690 (1984); *Doolin v. Department of Justice,* 21 M.S.P.R. 563, 566 (1984); *Woody v. General Serv. Admin.* 6 MSPB 410, 6 M.S.P.R. 486, 489 (1981); *see also Davis v. General Serv. Admin.* 5 MSPB 53, 4 M.S.P.R. 525, 526 (1981). Although we hold that this is an acceptable way to articulate a definition of "willful," *see Trans World Airlines, Inc. v. Thurston,* 469 U.S. 111, 128, 105 S.Ct. 613, 625, 83 L.Ed.2d 523 (1985), the presiding official misapplied this standard.

■ Had the word "willful" been omitted from the statute, the statute would apply to any authorization for any nonofficial purpose. It would have made all unwitting, inadvertent and unintended authorizations for nonofficial use a violation of the statute. *See Morissette v. United States,* 342 U.S. 246, 270, 72 S.Ct. 240, 253, 96 L.Ed. 288 (1952). Such is not the case here. That Felton's authorization was a conscious and intentional act was admitted, but a knowing authorization of an unofficial use requires more than mere intent

to do the act which lays the foundation for the charge. The requirement of knowledge applies to the unofficial nature of the use as well as to the authorization. She knew and intended to authorize the use, but there is no evidence that she actually knew that the use would be characterized as "nonofficial."

Nor can it be said that Felton's authorization was in reckless disregard of whether the use was for other than official purposes. EEOC Order No. 348, at 3 (May 28, 1979) states the agency's policy on the use of motor vehicles. In discussing official use the Order states: "What constitutes official purposes is a matter of administrative discretion to be exercised within applicable laws. The general rule may be stated that where transportation is essential to the successful operation of an authorized agency ... such transportation will be considered as official use." Viewing official use as a matter of administrative discretion, we think it clear that an administrator in Felton's position could reasonably have determined that the use authorized in this case would promote the successful operation of the agency.

Felton's testimony makes clear that she acted in good faith in attempting to solve an office emergency. Poor management judgment in selecting an alternative to solve an office emergency does not rise to the level of "reckless disregard." The presiding official appears to have confused the two when he stated: "[H]er excuse that it would promote the efficiency of the service to expedite appellant Mitchell's return to work by allowing her to use the government vehicle, although superficially appealing, is unpersuasive, as there were management alternatives other than authorization of an inappropriate use." Initial Decision at 8–9. The management alternatives, which the presiding official in his judgment would have utilized to deal with the office emergency, appear to be somewhat less effective in getting the emergency solved, *i.e.*, assuring the presence of the typist in the office. The presiding official stated:

> Mitchell was at the office when she telephoned appellant Felton. If appellant

Felton was concerned with getting the work accomplished, she could merely have advised ... Mitchell that she could not utilize the government vehicle and that the workload necessitated that ... Mitchell not be allowed to have any leave to secure her personal vehicle. Although appellant Mitchell may have had from 30 minutes to an hour of her own time prior to the 8:00 a.m. office starting time ... Felton could have merely advised ... Mitchell to return to the office no later than 8:00 a.m., or face a possible charge of absence without leave or other discipline.

Initial Decision at 7.

Felton may not have chosen, in the eyes of the presiding official, the best of the management choices available to her, but there is no evidence that Felton acted in "reckless disregard" of whether Mitchell's intended use was for other than official purposes.

Felton does not dispute that she was aware of the impropriety of authorizing use of a government vehicle for other than official purposes. However, there is no finding, and no evidence to support a finding, that Felton knew or should have known that the use of the vehicle in the circumstance of this case would be held to constitute use for a nonofficial purpose or that she acted in reckless disregard of whether the use was or was not for an official purpose. Without any such evidence, the finding that Felton knowingly, consciously, and willfully authorized Mitchell to use a government vehicle for other than an official purpose is not supported by substantial evidence.

REVERSED.

NICHOLS, Senior Circuit Judge, concurring.

I join in the court's judgment and in the opinion except where it conflicts with what follows.

The Congress, in provisions now codified in 31 U.S.C. §§ 1344 and 1349, which must be read together, has undertaken to place misuse of a government automobile or air-

craft somewhat in the category of *malum per se*, in contrast to misuse of other government property, which is only *malum prohibitum*. A superficial lawyer's reading, and doubtless that of many lay persons, including petitioner herein until instructed otherwise, would make the prohibition apply to home-to-work transportation only. Stern punishment is provided, but only for a "willful" violator. Nonwillful ones are presumably to be dealt with as willful or nonwillful misuse of a government boat might be, *i.e.*, with greater clemency. This generates the interesting discussion which is the essence of this case: how you interpret the word "willful" in its application to a violation resulting from a good faith nonfrivolous mistake as to the meaning of the law and its relationship to other aspects of an employee's or supervisor's duties.

Felton was supervisor for 60 days according to a somewhat fey practice of her agency with respect to its field offices. She enjoyed for that time the mouth-filling and imposing title of "interim rotating acting office director." If the post of supervisor there was vacant, instead of designating an acting supervisor for as long as needed, the agency made each of the rank and file supervisor for a time, thus assuring that no acting supervisor would really learn the supervisor's duties. If the supervisor wanted, as here, to be acquainted with the true intent of an obscurely worded law, she enjoyed minimum help from the agency in becoming prepared to deal with her problem. An employee, whose services were much needed, had suffered a car breakdown on the freeway: not only a personal disaster, but one for the agency if it could not help to get the problem solved and the employee back at her desk. Felton, as supervisor, authorized use of the official car to help in rescuing the employee's car. I am not holding this was a violation of the statute, if rightly construed. Congress left the term "official purpose" undefined except with respect to home-to-work transportation, obviously the evil chiefly targeted, as Felton perceived. A subjective "official purpose," a purpose so mere as to keep the office running, might or might not be enough. Assuming, however, that Felton's construction was erroneous, this by itself apparently triggers the MSPB's draconian rule. It allows no margin for honest error. If Felton knew, as she did, that the statute existed, she must pay the penalty whether she deserved to or not. It would make more sense, be fairer, and more consistent, to revive the ancient maxim: *Ignorantia juris non excusat* and punish her just the same if she did not know of the statute. Why take the trouble to learn anything about the laws if you are to be punished only if you know something about them but not enough?

This court refers to *Morissette v. United States*, 342 U.S. 246, 72 S.Ct. 240, 96 L.Ed. 288 (1952) in which Justice Jackson read the common law element of *scienter* into a statutory definition of a crime that omitted that element. It has been ever since a favorite Supreme Court opinion on statutory construction to many connoisseurs. It would seem to follow that a statutory definition of a crime, including the word "willful," requires something more of a guilty mind than common law *scienter* does. The statute here involved, while ostensibly not criminal, is essentially punitive in nature. So far as it differs from the criminal, the differences are not advantageous to the accused: for example, apparently it does not allow for prosecutorial discretion, and proof beyond a reasonable doubt is not required. Being punitive, however, it should be strictly construed.

In *Trans World Airlines, Inc. v. Thurston*, 469 U.S. 111, 105 S.Ct. 613, 83 L.Ed.2d 523 (1985), the Supreme Court teaches what more than *scienter* must appear if a violation of one of these civil-penal statutes is to be held "willful." The Age Discrimination in Employment Act, 29 U.S.C. § 626(b), is held "punitive" so far as it assesses double damages for a "willful" violation. *Trans World Airlines, Inc.*, 469 U.S. at 125, 105 S.Ct. at 623. The legislative history is cited and shows a criminal penalty for violation was altered before enactment to assess double damages, for the greater convenience of prosecutors. Citing with approval decisions of lower

courts in other cases, the Court then approves their holding, and that of the decision under review, that for the employer's violation to be "willful," it must have shown a "reckless disregard" for the question of whether its conduct was prohibited. *Id.* at 126, 105 S.Ct. at 624. The Court cites decisions of its own applying like standards to other statutes prescribing punishments for "willful" violations. Then it goes on to reject the view that a violation is "willful" if the employer is "cognizant of an appreciable possibility" there might be a violation or if he "knew the ADEA was 'in the picture.'" *Id.* at 127, 105 S.Ct. at 625. TWA's action having been taken on faith of legal advice and after careful consideration, it was not taken in "reckless disregard." *Id.* at 129, 105 S.Ct. at 626.

Felton was supervisor for 60 days, and made her decision after such careful consideration as its spot nature allowed. She supposed the Act prohibited home-to-work transportation in an official car, not a wholly unreasonable supposition for a lay person. She was not provided a lawyer at her elbow. If she had, he might have erred still as TWA's lawyers did. She acted for the good of the service and to resolve a crisis that threatened the performance of the EEOC's legal duties.

The MSPB's draconic standard is wholly at odds with the one our highest court has prescribed for fairness to a major airline. If the latter is good enough for TWA, it is good enough for an uninformed temporary supervisor saddled for 60 days with the task of managing an isolated field activity. On the entire record, the MSPB decision is not supported by substantial, or any evidence, and must be reversed.