Kevin R. KIMM, Petitioner,

v.

**DEPARTMENT OF the TREASURY,**
**Respondent.**

No. 94–3634.

United States Court of Appeals,
Federal Circuit.

Aug. 10, 1995.

was Anthony N. Torres, Atty., Office of Chief Counsel, Bureau of Alcohol, Tobacco and Firearms, Washington, DC.

Before RICH, LOURIE, and RADER, Circuit Judges.

LOURIE, Circuit Judge.

Kevin R. Kimm petitions for review of the August 18, 1994 final decision of the Merit Systems Protection Board, reversing the March 25, 1994 initial decision of the Administrative Judge ("AJ") and sustaining Kimm's thirty-day suspension from his position with the Department of the Treasury ("agency"). *Kimm v. Department of the Treasury,* 64 M.S.P.R. 198 (1994). Kimm was suspended for willfully using a government-owned vehicle for other than official purposes in violation of 31 U.S.C. § 1349(b). Because the board's determination that Kimm's use was willful was not supported by substantial evidence, we reverse.

## BACKGROUND

Kimm is a highly decorated criminal investigator who has served for more than ten years at the agency's Bureau of Alcohol, Tobacco and Firearms ("ATF"). By letter dated April 1, 1993, Kimm was notified that the agency proposed to suspend him from duty and pay status for thirty calendar days based on a charge that he willfully used a government-owned vehicle ("GOV") for other than official purposes in violation of 31 U.S.C. § 1349(b).

As support for the suspension, the agency cited Kimm's alleged admission to an agency investigator that Kimm had driven his son to day care in his GOV one time during November 1992 and on two or three other occasions during the preceding year. In a written reply, Kimm denied informing the investigator that he had transported his son in the GOV in November 1992, but stated instead that he had transported his son to and from day care in his GOV on a few occasions during August 1992 when his wife was placed on bed rest due to complications arising from

Herbert Adelman, Arlington, VA, argued for petitioner.

Dominique Kirchner, Atty., Commercial Litigation Branch, Dept. of Justice, Washington, DC, argued for respondent. With her on the brief were Frank W. Hunger, Asst. Atty. Gen., David M. Cohen, Director, Anthony H. Anikeef, Asst. Director. Of counsel

her pregnancy.[1] Kimm was accordingly suspended.

In an initial decision issued March 25, 1994, the AJ reversed the agency's action, holding that the agency failed to prove by preponderant evidence that Kimm willfully used his GOV for other than official reasons. The AJ summarized Kimm's testimony at his hearing regarding his belief that his GOV use would not constitute a nonofficial use under the circumstances as follows:

[Kimm] testified that ordinarily his wife drove their son to and from day care. However, in August, 1992, his wife was going through a difficult pregnancy. She had suffered previous miscarriages, and because she had begun to again experience early contractions (the due date was in October), she was ordered by her doctor to remain in bed. [Kimm] testified that on the Friday before the first work week in August, his wife's doctor had ordered her to avoid stressful activity, but that on Tuesday of the following week, he called and ordered her to remain in bed at all times.

[Kimm] testified that it was during the remainder of this week in August that he transported his son to and from day care three or four times. During the second work week of August, he was home on sick leave, and transported his son to and from day care in one of his [personal vehicles]. Following that week, [Kimm's] wife's parents stayed with them, and provided the necessary transportation.

[Kimm] testified that his position required him to be "on call" around the clock, seven days-a-week, that he was often called out in the middle of the night, and occasionally had to sleep in his GOV. He testified that his GOV was equipped with weapons and an encrypted radio, so that he could be in constant contact with his office. [He] testified that during August, 1992, he was working a great deal of overtime, was often the Acting Resident Agent in Charge, and that he had been heavily

involved in an extremely dangerous conspiracy investigation.

[Kimm] testified that he deviated from the most direct route to and from work by 2.6 miles each way in order to take his son to or from day care. [If Kimm] had taken his son to day care in a [personal vehicle], then returned home to obtain his GOV, and then proceeded to work, the round trip would have been 21.2 miles, and would have taken a total of approximately 40 minutes, due to heavy commuter traffic. [Kimm] testified that due to his extremely heavy work load and long hours, he believed that he was making the most efficient use of his and the agency's time by providing transportation to his son in the GOV during his wife's "medical emergency." [Kimm] testified that he believed the agency's regulations allowed him discretion to make a "minor deviation." He testified that it was standard practice, for example, to make minor deviations to find a place to eat dinner while on a mission, or to alter one's route to and from the office, if a death threat had been received. He also testified that the agency was lax in the enforcement of its GOV regulations, and cited a number of incidents that he believed had occurred to support this belief.

Relying on Kimm's testimony and on this court's decision in *Felton v. Equal Employment Opportunity Commission*, 820 F.2d 391 (Fed.Cir.1987), the AJ found that Kimm did not act with the requisite knowledge or reckless disregard that his GOV use constituted a nonofficial use. Instead, because Kimm was continuously on call and authorized to use his GOV for commuting, the AJ found that "his belief that he had discretion to rectify a family emergency and simultaneously maximize the time he was available to perform his agency functions, was a good faith belief, and not in reckless disregard of the agency's regulations." Thus, the AJ found that the agency did not prove willful misuse within the meaning of § 1349(b). The agency petitioned the full board for review of the initial decision.

1. The board found that the agency did not prove the alleged November 1992 use. Only the Au-

gust 1992 use remains at issue.

On August 18, 1994, the board reversed the initial decision and sustained the suspension. The board stated that

a reasonable person in [Kimm's] position could not have determined that the presence of his 3–year old son in the GOV was essential to the completion of an official mission. [citing *Felton* ] Further, there is no indication in the record that, on the occasions when [Kimm] transported his son in his GOV, the presence of his son was necessary for [Kimm's] protection while engaged in foreseeable arrests and seizures. We therefore find that the appellant did not reasonably exercise the discretion afforded him under the agency's Orders, which did not permit the transportation of unauthorized persons in a GOV in order to maximize an employee's availability for work during a "medical emergency" involving a family member. We find that the purpose of the presence of the appellant's son in the GOV was to further the appellant's personal convenience in transporting his son to day care during his wife's illness.

The board concluded that "more likely than not, [Kimm's] use of his GOV constitutes willful misuse." Kimm petitioned for review of the board's final decision. We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(9).

## DISCUSSION

■ Our standard of review for board decisions is governed by statute, which directs us to set aside board actions, findings, or conclusions found to be—

(1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law;

(2) obtained without procedures required by law, rule, or regulation having been followed; or

(3) unsupported by substantial evidence....

5 U.S.C. § 7703(c) (1988). Under this standard, we will reverse the board's decision if it is not supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Brewer v. United States Postal Serv.*, 647 F.2d 1093, 1096, 227 Ct.Cl. 276 (1981) (quoting *Consoli-*

*dated Edison Co. v. National Labor Relations Bd.*, 305 U.S. 197, 229, 59 S.Ct. 206, 217, 83 L.Ed. 126 (1938)), *cert. denied*, 454 U.S. 1144, 102 S.Ct. 1005, 71 L.Ed.2d 296 (1982). The question before us is not how the court would rule upon a *de novo* appraisal of the facts of the case, but whether the administrative determination is supported by substantial evidence in the record as a whole. *Hayes v. Department of the Navy*, 727 F.2d 1535, 1537 (Fed.Cir.1984).

Kimm argues that the board's determination that he willfully used a GOV for a nonofficial use was not supported by substantial evidence. Kimm also asserts that the board was required to dismiss his appeal pursuant to 5 C.F.R. § 1201.115(b)(4) because the agency did not fully comply with the interim relief provision of 5 U.S.C. § 7701(b)(2)(A) since it did not purge his record pending the government's appeal to the full board. Finally, Kimm asserts that the agency committed several prejudicial procedural errors during his investigation and suspension. The government, on the other hand, argues that the board properly sustained Kimm's suspension. Because we agree with Kimm that the board's decision was not supported by substantial evidence, we need not address his other assertions of error.

■ Section 1349(b) of Title 31, United States Code, provides in pertinent part that

[a]n officer or employee who *willfully uses* or authorizes the use of *a passenger motor vehicle ... owned ... by the United States Government (except for an official purpose authorized by section 1344 of this title) ... shall be suspended without pay by the head of the agency*. The officer or employee shall be suspended for at least one month, and when circumstances warrant, for a longer period or summarily removed from office.

31 U.S.C. § 1349(b) (1988) (emphasis added). In *Felton v. Equal Employment Opportunity Commission*, 820 F.2d 391 (Fed.Cir.1987), we held that a violation of § 1349(b) required more than a showing that the employee intended to take the action that provided the foundation for the charge. *Id.* at 393. Rather, in order for the action to constitute a

willful use for a nonofficial purpose within the meaning of the act, the employee must have had actual knowledge that the use would be characterized as "nonofficial" or have acted in reckless disregard as to whether the use was for nonofficial purposes. *Id.* at 394. The board in this case did not specify whether, in its view, the agency had proved that Kimm actually knew or had acted with reckless disregard of the nonofficial nature of his GOV use; however, the record supports neither view.

■ After hearing Kimm's testimony and considering all the evidence, the AJ specifically found that Kimm did not have actual knowledge that the use would constitute a nonofficial use. The AJ characterized Kimm's demeanor during his testimony as "straightforward and unwavering ... and consistent with his written and oral replies." In contrast, the AJ found the agency's evidence "inherently improbable." The AJ considered the fact that Kimm is a highly decorated ATF agent with more than ten years of service, a flawless record, and an excellent reputation, making it unlikely that Kimm would knowingly violate a rule or, if he did so, would then lie about his motives. When, as with a determination concerning a witness's state of mind, the AJ's finding is explicitly or implicitly based on the demeanor of a witness, the board may not simply disagree with the AJ's assessment of credibility. *Chauvin v. Department of Navy,* 38 F.3d 563, 566 (Fed.Cir.1994). If the board reverses such a finding, we will not sustain its decision on appeal unless the board has articulated sound reasons, based on the record, for its contrary evaluation of the testimonial evidence. *Id.* Here, the board did not articulate any reason for a contrary evaluation of the testimony and we therefore will not sustain its decision to the extent that it was based on Kimm's knowledge that the use of the GOV was nonofficial.

■ The AJ also specifically determined that the agency did not prove that Kimm acted with "reckless disregard" concerning whether the use was for other than official purposes. Rather, the AJ held that, under the circumstances, Kimm could reasonably have determined that his GOV use would promote the successful operation of the agency by saving considerable time and by maintaining contact with his agency during a time when Kimm was on call around the clock. In reversing the AJ, the board stated that "the agency's Orders ... did not permit the transportation of unauthorized persons in a GOV in order to maximize an employee's availability for work during a 'medical emergency' involving a family member."

The agency's policy with regard to GOV use provides that employees are responsible for using GOVs for official purposes only, including transporting only those persons whose presence is essential to the successful completion of an official mission. *See* ATF Order 1850.1A, 1850.6A, 2735.1, 3000.1D.[2] The agency orders provide that "[p]ersons not deemed essential to the completion of an official mission can include other Bureau employees or family members." ATF Order 2735.1. The orders also call for the employee's exercise of judgment in determining whether the transportation of a particular person is essential to the success of the mission. ATF Order 1850.1A.

As the board stated, the agency policy does not specify that the conduct at issue

2. ATF Order 1850.1A (May 3, 1984) states, in pertinent part:

b. *Vehicle Operation.* All Bureau employees utilizing an ATF-owned motor vehicle are responsible for:

(1) Using the vehicle for official purposes only, as required by law, including but not limited to:

\* \* \* \* \* \*

(b) Furnishing transportation only to persons whose presence is deemed essential to the successful completion of the official mission. Determining whether the transportation of a particular person is essential to the

success of the mission demands the exercise of good judgment which will be guided by the following rules:

*1* Transportation is not to be furnished to anyone unless the vehicle is being used on an official mission and the presence in the vehicle of each person transported is essential to the completion of the mission.

*2* Where foreseeable arrests and seizures are to be made, no private person will be transported in a Government vehicle unless there is an emergency and the help of such person is necessary for the protection of the special agent engaged in these activities.

here is permitted. However, the policy does not set forth specific types of conduct and characterize the official nature of each; the policy calls only for good faith judgment by an employee. Kimm does not dispute that he was aware of the agency policy and of the impropriety of using a GOV for other than official purposes; however, whether a use constitutes a nonofficial purpose leaves room for the exercise of judgment, which, under the circumstances, Kimm did not improperly exercise.

In particular, Kimm was involved in an around-the-clock, dangerous investigation, which required him to be on call at all times. He was authorized to commute to work in his GOV, which contained specialized equipment necessary to remain in contact with the agency. Kimm was under considerable stress, not only from long hours of overtime, but from the possibility of his wife miscarrying. Kimm was also aware of the culture of the agency, which allowed minor deviations in the use of GOVs. Given the circumstances, Kimm could reasonably have concluded that bringing his son to and from day care on his way to and from work during a limited medical emergency, saving time and maintaining contact with his agency, was essential to successful completion of his mission. Even if Kimm could have first secured permission to transport his son, his failure to do so given the circumstances does not amount to "reckless disregard" for the regulations.

The board also concluded that "a reasonable person in [Kimm's] position could not have determined that the presence of his 3–year old son in the GOV was essential to the completion of an official mission." To support this conclusion, the board explained that on the occasions in question, the presence of Kimm's son was not actually necessary for Kimm's protection. However, whether Kimm's son was necessary for Kimm's protection is not probative as to whether Kimm was reckless in his disregard for regulations or whether he reasonably believed that he should use the GOV on a particular occasion to promote the success of his mission. Thus,

the reason the board disagreed with the AJ is not relevant to the question whether a reasonable person should have known that the use of the vehicle under the circumstances of this case would be held to constitute use for a nonofficial purpose.

It is of course absurd to consider the presence of a three-year-old child as being necessary for Kimm's protection. The point is whether, under the circumstances, Kimm's use of the GOV was in reckless disregard as to whether the use was nonofficial. Clearly, Kimm was not acting in reckless disregard. Kimm thought he was conscientiously fulfilling his duties to the best of his ability.

Thus, there is no evidence of record to support a finding that Kimm knew or should have known that the use of the vehicle in the circumstances of this case would be held to constitute use for a nonofficial purpose or that he acted in reckless disregard for whether the use was or was not for an official purpose. Official use was left to good judgment and we think it clear that Kimm could reasonably have determined that the use would promote the success of his mission by saving time and maintaining contact with the agency when he was authorized to commute and was on call at all times.

## CONCLUSION

The finding of the board that Kimm willfully used a GOV for other than an official purpose is not supported by substantial evidence. Therefore, we reverse.

## COSTS

Costs shall be awarded to Kimm.

*REVERSED.*