**Samuel G. UTNAGE, II, Petitioner,**

v.

**DEPARTMENT OF THE
ARMY, Respondent.**

No. 04–3191.

United States Court of Appeals,
Federal Circuit.

Oct. 6, 2004.

Before LOURIE, GAJARSA, and LINN, Circuit Judges.

PER CURIAM.

Samuel G. Utnage, II, appeals from the final decision of the Merit Systems Protection Board affirming the Army's decision to suspend him from service for thirty days for misuse of a government-owned vehicle. *Utnage v. Dep't of Army*, No. DE–0752–02–0430–I–1, 95 M.S.P.R. 434 (M.S.P.B. Jan.22, 2004) (*"Final Order"*). We *affirm*.

## BACKGROUND

On January 24, 2002, Mr. Utnage, a GS–6 Police Officer at White Sands Missile Range, was observed coming out of his residence and walking to his assigned patrol vehicle—parked about a block away—while he was supposed to have been on duty. *Utnage v. Dep't of Army*, No. DE–0752–02–0430–I–1, slip op. at 1–2 (M.S.P.B. Jan.22, 2003) (*"Initial Decision"*). The Army suspended Utnage from service for thirty days. *Id.* at 1. Utnage then appealed his suspension to the Merit Systems Protection Board.

Before the Board, Utnage stipulated that he knew that he was not supposed to use a government vehicle to drive home for meal breaks,[1] and that the penalty for misuse of a government vehicle is a thirty-day suspension.[2] *Id.* at 2. Utnage argued, however, that his conduct was not misuse, because he had parked one block away from his home and walked the remaining block, and therefore had not actually driven to his home. *Id.* The Board's Administrative Judge ("AJ") rejected that argument, finding that Utnage was clearly trying to evade the law. *Id.* at 3. Parking one block away did not change his true destination, according to the AJ, and although Utnage did not have actual knowledge that the use would be characterized as nonofficial and earnestly argued that his action was too insignificant to rise to the level of misuse, his conduct amounted

to a reckless disregard for whether his use would be considered unofficial, particularly in view of the fact that he knew that he was not permitted to drive home for meals. *Id.*

The AJ also rejected several other arguments made by Utnage, including that other employees occasionally used government vehicles for minor personal usage and that Utnage's going home without having to turn in his firearm first had promoted the official mission of the agency and allowed the appellant to better perform his duties. *Id.* at 3–4. According to the AJ, the first argument might have mitigated the penalty but for the fact that the penalty here was prescribed by statute and was not subject to mitigation. *Id.* at 4–5. Further, the AJ found that Utnage was not en route to any agency destination while driving home and was not performing duties for the agency during his dinner break. *Id.* at 4. Accordingly, the AJ affirmed Utnage's suspension. *Id.* at 5.

Utnage petitioned the full Board for review of the Initial Decision. Concluding that there was no new, previously unavailable evidence and that the AJ made no error in law or regulation that affected the outcome of the appeal, the Board denied Utnage's petition, rendering the Initial Decision final. *Final Order*, slip op. at 1–2.

Utnage timely appealed to this court. We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(9).

---

1. The relevant Base Commander's Guidance CG–03–99, "Official Use of Government Vehicles," provided that "Government owned or leased vehicles may not be used to provide transportation for any part of the route between an employee's residence and place of work." The Commander's Guidance also explained that "DoD policemen ... work extended hours when it is not feasible for them to 'stand down' for meals. While on duty during meal periods, and subject to emergency recall, these individuals may use government vehicles for transportation to and from on post eating establishments, *not to include their place of residence.*" (Emphasis added).

2. Under 31 U.S.C. § 1349(b), "[a]n ... employee who willfully uses ... a passenger motor vehicle ... owned or leased by the United States Government (except for an official purpose authorized by section 1344 of this title) ... shall be suspended without pay by the head of the agency. The ... employee shall be suspended for at least one month...."

## DISCUSSION

Congress has expressly limited the scope of our review in an appeal from the Board. Specifically, we must affirm the Board's decision unless we find it to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; obtained without procedures required by law, rule, or regulation having been followed; or unsupported by substantial evidence. 5 U.S.C. § 7703(c) (2000); *Ellison v. Merit Sys. Prot. Bd.,* 7 F.3d 1031, 1034 (Fed.Cir.1993). "Under the substantial evidence standard of review, a court will not overturn an agency decision if it is supported by 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Jacobs v. Dep't of Justice,* 35 F.3d 1543, 1546 (Fed.Cir. 1994) (quoting *Consol. Edison Co. of N.Y. v. NLRB,* 305 U.S. 197, 299, 59 S.Ct. 206, 83 L.Ed. 126 (1938)). Moreover, the Supreme Court has explained that "the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial evidence." *Consolo v. Fed. Mar. Comm'n,* 383 U.S. 607, 620, 86 S.Ct. 1018, 16 L.Ed.2d 131 (1966).

██ On appeal, Utnage argues that the AJ ignored three previous Board rulings on minor personal use, *Ferguson v. Dep't of Army,* 8 MSPB 274, 8 M.S.P.R. 615 (1981), *D'Elia v. Dep't of Treasury,* 12 MSPB 242, 14 M.S.P.R. 54 (1982), and *Lynch v. Dep't of Justice,* 32 M.S.P.R. 33 (1986), and misinterpreted our ruling in *Kimm v. Dep't of Treasury,* 61 F.3d 888 (Fed.Cir.1995). He also argues that he and his coworkers were allowed to park across the street from a local "shoppette," even though they were not allowed to drive government-owned vehicles to the shoppette, and that he was accordingly led to believe that his parking a block away from

his residence would not be characterized as "nonofficial." Further, he argues that his actions constituted "a respectful approach to the law, regulation and performance of my duties," rather than "reckless disregard" of the law, because, he asserts, "it is ok to use my vehicle for non-official purposes, such as having dinner, at any location in my patrol vehicle but the vehicle may not go to my residence even though I live in the same area I work."

The Army responds that the Board correctly applied the governing principles of law to the present case and that the determinative facts were undisputed. The Army distinguishes the earlier Board cases cited by Utnage, in that all three simply involved an en route personal stop in the course of using a government vehicle primarily for the business of the respective agencies and did not amount to misuse, even if that use might also have furthered some minor personal use. The Army points out that none of those cases involved an employee driving a government-owned vehicle to his residence for a meal break. The Army also distinguishes *Kimm* on the basis that the appellant in that case had authorization to commute to work in a government-owned vehicle pursuant to his being involved in an around-the-clock investigation that required him to be on call at all times. According to the Army, Utnage had no such authorization. The Army also contends that subsections (b) and (c) of 31 U.S.C. § 1344 provide certain limited exceptions to the statutory prohibition against the use of government-owned vehicles for commuting, but that Utnage's use of the government vehicle in this case to go to his residence for meal breaks was not included among those statutory exceptions. Consequently, the Army argues, the AJ properly found that Utnage's conduct was in "reckless disregard for whether his use would be consid-

ered official." Finally, the Army asserts that an employee who violates the statutory prohibition against personal use of a government-owned vehicle must be suspended for not less than one month, and no lesser penalty is permitted under 31 U.S.C. § 1349(b).

We agree with the Army that the Board properly affirmed Utnage's suspension. Substantial evidence supports the Board's conclusion that Utnage's use of a government-owned vehicle to drive a block from his residence was an unauthorized use. Were the Board to have found that parking a block from Utnage's residence was permissible while parking at his residence was not, it would be subordinating substance to form and make a mockery of the law. Furthermore, the Board's decision is in accordance with the procedures set forth in the governing law and the Board did not act arbitrarily and capriciously or abuse its discretion by imposing upon Utnage the statutory penalty prescribed by Congress for unauthorized use of a government-owned vehicle.

We have considered Utnage's remaining arguments and find them unconvincing.

## CONCLUSION

For the foregoing reasons, we affirm the Board's decision.