**Charlotte DICICCO, Plaintiff,**

v.

**Robert A. VOCCOLA, in his individual capacity, and City of Shelton, Defendants.**

**No. CIV.3:01 CV 1004 (AHN).**

United States District Court,
D. Connecticut.

May 28, 2004.

Kathleen Eldergill, Beck & Eldergill, Manchester, CT, for Plaintiff.

Mark J. Sommaruga, Sullivan, Schoen, Campane & Connon, Hartford, CT, for Defendants.

## RULING ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

NEVAS, District Judge.

Plaintiff Charlotte DiCicco ("DiCicco") has brought suit against her former employer, the City of Shelton, and her supervisor, Chief of Police Robert A. Voccola ("Voccola"), in his individual capacity (collectively, "Defendants") for (1) violating the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq.;* (2) violating Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.;* and (3) depriving under 42 U.S.C. § 1983 her rights to equal protection as guaranteed by the Fourteenth Amendment. Upon completion of discovery, Defendants filed a Motion for Summary Judgment on all counts pursuant to Fed. R.Civ.P. 56 and Loc. R. Civ. P. 9(c) (D.Conn.). Defendant Voccola also moves in his individual capacity for summary judgment on the § 1983 claim because he contends that he has qualified immunity from such suits for damages. For the following reasons, the motion [Doc. # 20] is DENIED in its entirety.

### STANDARD

A motion for summary judgment may not be granted unless the court determines that there is no genuine issue of material fact to be tried and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. Rule 56(c); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 256, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The burden of showing that no genuine factual dispute exists rests on the party seeking summary judgment. *See Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970); *Cronin v. Aetna Life Ins. Co.,* 46 F.3d 196, 202 (2d Cir.1995). After discovery, if the party against whom summary judgment is sought "has failed to make a sufficient showing on an essential element of [its] case with respect to which [it] has the burden of proof," then summary judgment is appropriate. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

The substantive law governing a particular case identifies those facts that are material with respect to a motion for summary judgment. *See Anderson,* 477 U.S. at 258, 106 S.Ct. 2505. A court may grant summary judgment " 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact ....' " *Miner v. Glens Falls,* 999 F.2d 655, 661 (2d Cir. 1993) (citation omitted); *see also United States v. Diebold, Inc.,* 369 U.S. 654, 655, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962). "A dispute regarding a material fact is genuine 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.' " *Aldrich v. Randolph Cent. Sch. Dist.,* 963 F.2d 520, 523 (2d Cir.1992) (quoting *Anderson,* 477 U.S. at 248, 106 S.Ct. 2505), *cert. denied,* 506 U.S. 965, 113 S.Ct. 440, 121 L.Ed.2d 359 (1992).

In considering a Rule 56 motion, "the court's responsibility is not to resolve disputed issues of fact but to assess whether there are any factual issues to be tried, while resolving ambiguities and drawing reasonable inferences against the moving party." *Knight v. U.S. Fire Ins. Co.,* 804 F.2d 9, 11 (2d Cir.1986) (citing *Anderson,* 477 U.S. at 248, 106 S.Ct. 2505; *Eastway Constr. Corp. v. City of New York,* 762 F.2d 243, 249 (2d Cir.1985)); *see also Ramseur v. Chase Manhattan Bank,* 865 F.2d 460, 465 (2d Cir.1989); *Donahue v. Windsor Locks Board of Fire Comm'rs,* 834 F.2d 54, 57 (2d Cir.1987). Thus, "[o]nly when reasonable minds could not differ as to the import of the evidence is summary judgment proper." *Bryant v. Maffucci,* 923 F.2d 979, 982 (2d Cir.1991),

*cert. denied,* 502 U.S. 849, 112 S.Ct. 152, 116 L.Ed.2d 117 (1991); *see also Suburban Propane v. Proctor Gas, Inc.,* 953 F.2d 780, 788 (2d Cir.1992).

## FACTS

The principal facts underlying this case involve the conduct of two individuals, Plaintiff DiCicco and Defendant Voccola. Since 1978, DiCicco worked for the City of Shelton Police Department until she took medical leave in March 2000. In 1999, the key year for this litigation, DiCicco was 58 years old and was serving as a sergeant and shift commander. Defendant Voccola began his tenure as Chief of Police on March 4, 1999. Prior to Voccola's arrival as Chief of Police, DiCicco had never been disciplined during her 21 years of service to the department.

Personal animosity existed between DiCicco and Voccola well before 1999. The source of this enmity was two pre–1999 incidents involving Voccola's son and DiCicco in her capacity as a police officer. When Voccola's son was nine years old, DiCicco referred him to a youth officer for vandalism. When the same son was fifteen years old, DiCicco arrested him for drag racing and motor vehicle violations. Unhappy that DiCicco refused to void his son's second arrest, Voccola allegedly stated: "All you fucking women libbers are alike."[1] Voccola's moving papers do not deny that he made this statement.

DiCicco claims that Voccola made two other discriminatory remarks as Chief of Police. First, Voccola allegedly stated: "There are only two places for a female cop. One is behind a desk and (Officer Mary Beth) Guisto is right where she be-

longs. The other I'll leave to your imagination." Second, when speaking to a senior male sergeant in the department, Voccola allegedly stated: "Why don't you old sergeants just retire.... Get out of here, you're absolutely useless." Voccola denies making both statements.

Next, DiCicco claims that Voccola specifically targeted her for age or sex-based discrimination. First, DiCicco alleges that Chief Voccola instructed her immediate supervisor, Lieutenant Arsenault, to scrutinize her and her subordinates' work more carefully than that of her fellow sergeants, who were younger males, and to "write her up for anything and everything." Defendants and Lieutenant Arsenault deny that DiCicco was singled out for any reason. They point out that Lieutenant Arsenault's review of her work was part of a larger effort to increase the efficiency and professionalism of the department, and that Lieutenant Arsenault uncovered errors in memos written by officers under DiCicco's supervision. Defendants state that these actions were justified because a management study of the department had determined that the force's organizational structure was "dysfunctional" and that sergeants were not adequately supervising their shifts.

Second, DiCicco claims that Voccola had pretextual reasons for suspending her without pay. The parties sharply disagree about Voccola's motives for this decision. On July 6, 1999, during a busy 1600–2400 hour shift, Voccola instructed the radio dispatcher to order her to help re-direct traffic congestion caused by an auto accident on a major roadway. DiCicco believed that Voccola had no understanding

---

[1] DiCicco further complains that Voccola intentionally and habitually mispronounced her name as "Die Sicko." Voccola counters that any errors in pronunciation were made in good faith and not meant to harass her. DiCicco further charges that Voccola sought to cause her emotional distress by removing from the City of Shelton police station the photograph and certain mementos belonging to her father, a decorated 27–year–old former member of the force. Voccola maintains that this accusation is also baseless.

of the problem because the traffic had abated by the time Voccola issued this directive. Consequently, when the dispatcher communicated Voccola's order to her, she told the dispatcher that "[Voccola] could go fuck himself." DiCicco maintains that this remark was made in the context of her private conversation with the dispatcher, and that the dispatcher was the only person who contemporaneously heard DiCicco's comment.

Voccola, however, heard secondhand about DiCicco's comment, and went to great lengths to create an audio tape from the dispatcher's recordings that captured her profane remark. Using this audio tape as his justification, Voccola suspended her fifteen days without pay for insubordination. DiCicco counters that other sergeants received comparatively mild punishment for more egregious violations, such as when a male sergeant 17 years her junior received a "letter of counseling" for sleeping on the midnight shift, thereby leaving the police headquarters in darkness. This sergeant's commanding officer, who was male and 18 years younger than DiCicco, also received a letter of counseling for this dereliction of duty. Neither officer was suspended.

DiCicco challenged the suspension by filing an administrative grievance with the State Board of Mediation and Arbitration of the Connecticut Board of Labor ("Arbitration Board"). After a hearing, a unanimous panel of three arbitrators—one selected by the police union, one selected by the City of Shelton, and one neutrally selected—reversed the suspension and decided that Voccola did not have just cause to discipline DiCicco. The panel's written determination included the following reasons, among others:

- "1. The discussion between [DiCicco] and dispatcher Colucci wherein [DiCicco] said the Chief could go f___ himself, was private between the parties to the conversation. While the Panel in no way condones the use of profanity by [DiCicco], *the statement was not made directly to the Chief nor was it made in the presence of officers (other than to the dispatcher).*"

- "2. The Chief's directive to [DiCicco] about how to control the traffic was made without him knowing all the facts and circumstances surrounding the bumper to bumper traffic. The traffic apparently cleared by the time [DiCicco's] replacement (Sergeant Adams) appeared on the scene. *There is no evidence in the record to suggest that complying with the Chief's directive would have alleviated the problem.*"

- "3. There is no evidence to support the City's position that failure to comply with the Chief's order allowed the traffic problem to continue and create a perception that the department did not know about or was ignoring the problem."

- "4. There is no evidence in the record to substantiate the City's assertion that the profanity caused [DiCicco] to diminish herself as a supervisor and weakened her ability to hold her subordinates to department standards and rules."

- "5. *The investigation by the deputy did not occur until approximately four weeks after the incident and failed to include interviews with [DiCicco] and other officers and dispatchers on duty on the day of the incident. If those individuals were, in fact, interviewed, it is reasonable to conclude that the suspension would not have occurred.*"

Ruling of Arbitration Board at 3–4 (emphasis added).

## DISCUSSION

I. *DiCicco's Age and Sex Discrimination Claims*

A. *Applicable Law*

To sustain a claim of discrimination

based pursuant to Title VII or the ADEA,[2] a plaintiff must satisfy the three-part burden-shifting test set forth in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), and its progeny. *See Reeves v. Sanderson Plumbing Products, Inc.,* 530 U.S. 133, 142, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000); *St. Mary's Honor Ctr. v. Hicks,* 509 U.S. 502, 507, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993); *Texas Dep't Community Affairs v. Burdine,* 450 U.S. 248, 252–53, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). Initially, a plaintiff asserting an employment discrimination claim has the burden of "presenting evidence sufficient to establish a *prima facie* case of discrimination." *Cronin v. Aetna Life Ins. Co.,* 46 F.3d 196, 203 (2d Cir.1995) (citing *Hicks,* 509 U.S. at 502, 113 S.Ct. 2742; *Burdine,* 450 U.S. at 253, 101 S.Ct. 1089; *McDonnell Douglas,* 411 U.S. at 802, 93 S.Ct. 1817). To establish a *prima facie* case for adverse employment action resulting from sex or age discrimination, the plaintiff must demonstrate: (1) that he was within the protected group; (2) that he was qualified for the position; (3) that he suffered an adverse employment action; and (4) that the adverse employment action occurred under circumstances giving rise to an inference of [sex or age] discrimination. *See, e.g., Spence v. Maryland Cas. Co.,* 995 F.2d 1147, 1155 (2d Cir.1993). The Second Circuit has "characterized the evidence necessary to satisfy this initial burden as minimal and *de minimis.*" *Zimmermann v. Associates First Capital Corp.,* 251 F.3d 376, 381 (2d Cir.2001) (internal quotation marks omitted).

If the plaintiff succeeds in establishing a *prima facie* case, the burden of production shifts to the defendant to articulate an explanation to rebut the *prima facie* case—that is, the burden of producing evidence that the adverse employment action was taken for a legitimate nondiscriminatory reason. *Burdine,* 450 U.S. at 253, 101 S.Ct. 1089; *McDonnell Douglas,* 411 U.S. at 802, 93 S.Ct. 1817. To meet this burden, "the defendant must clearly set forth, through the introduction of admissible evidence," reasons for its actions which, if believed by the trier of fact, would support a finding that unlawful discrimination was not the cause of the employment decision. *Burdine,* 450 U.S. at 254–55 & n. 8, 101 S.Ct. 1089. Any legitimate, nondiscriminatory reason will rebut the presumption triggered by the *prima facie* case; the defendant need not persuade the court that it was actually motivated by the proffered reason. *Id.*

Once the employer has proffered a nondiscriminatory reason, "[t]he presumption, having fulfilled its role of forcing the defendant to come forward with some response, simply *'drops out of the picture.'*" *Hicks,* 509 U.S. at 510–11, 113 S.Ct. 2742 (quoting *Burdine,* 450 U.S. at 253, 101 S.Ct. 1089) (emphasis in original). At this point the *"McDonnell Douglas* framework—with its presumptions and burdens—is no longer relevant." *Hicks,* 509 U.S. at 510, 113 S.Ct. 2742. The question is simply the following: Has the plaintiff shown, by a preponderance of the evidence, that the defendant is liable for the alleged conduct? *Id.* The plaintiff must point to sufficient evidence to support a finding that the legitimate nondiscriminatory reason proffered by the employer "was false, *and* that discrimination was the real reason." *Hicks,* 509 U.S. at 515, 113 S.Ct. 2742 (emphasis in original).

■ Furthermore, the Supreme Court's recent opinion in *Reeves* counsels that when deciding whether a judgment as a matter of law is warranted, a court must

---

**2.** Title VII and ADEA claims are analyzed under the same burden-shifting framework. *See TWA v. Thurston,* 469 U.S. 111, 121, 105 S.Ct. 613, 621, 83 L.Ed.2d 523 (1985).

take a case-specific approach and evaluate a number of factors, including "the strength of the plaintiff's *prima facie* case, the probative value of the proof that the employer's explanation is false, and any other evidence that supports the employer's case and that properly may be considered on a motion for judgment as a matter of law." *Reeves*, 530 U.S. at 148–49, 120 S.Ct. 2097; *see also id.* ("plaintiff's prima facie case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated"). In turn, the Second Circuit has advised that the court's task is "to examine the *entire record* and, in accordance with *Reeves, make the case-specific assessment* as to whether a finding of discrimination may reasonably be made." *Zimmermann*, 251 F.3d at 382 (emphasis added).

### B. *Analysis*

Defendants contend that DiCicco has failed to establish a *prima facie* case for discrimination under Title VII or the ADEA because she has not shown that any adverse employment action occurred under circumstances giving rise to an inference of discrimination. Defendants further assert that even assuming DiCicco has made her *prima facie* case, her suspension was effected for a legitimate nondiscriminatory reason—that is, to promote discipline, efficiency, and professionalism in the police department. Finally, Defendants argue that DiCicco has presented insufficient evidence to demonstrate that the nondiscriminatory reason for her adverse employment action was false, and that sex or age discrimination factored into their decision-making process.

■ The court disagrees with Defendants and finds that the entire record, when viewed under the *Reeves* standard, presents genuine issues of material fact regarding why Defendants suspended DiCicco and gives rise to reasonable inferences that impermissible discrimination occurred. Despite Defendants' arguments to the contrary, DiCicco has established her *prima facie* case of sex and/or age discrimination and, in the face of Defendants' explanation for her suspension, presented sufficient evidence from which a reasonable factfinder could find that this proffered reason was false and pretextual. Although no single fact in this record compels this conclusion, the court holds that the evidence viewed as a whole presents sufficient disputed issues of material fact to merit a jury's consideration.

#### 1. *The Age and Sex–Based Remarks*

At its core, a factual dispute exists as to whether sex or age discrimination factored into Voccola's decision to discipline DiCicco. Defendants maintain that Voccola's actions were designed to improve the force's discipline, professionalism, and efficiency. Defendants claim that the suspension of Voccola was merely part of an overall effort to improve a police department in need of serious reform.

■ Two key sets of facts, however, could allow a reasonable factfinder to conclude that DiCicco's suspension was the product of discrimination on Voccola's part. Discriminatory remarks, particularly in conjunction with other evidence of bias, can serve as compelling evidence that an employer acted with discriminatory intent. *See Danzer v. Norden Systems, Inc.*, 151 F.3d 50, 56 (2d Cir.1998). The parties disagree whether Voccola made certain derogatory age or sex-based comments. DiCicco claims that Voccola made two remarks indicating a clear bias against women: "[A]ll you fucking women libbers are alike," and that "[t]here are only two places for a female cop. One is behind a desk and .... [t]he other I'll leave to your imagination." She further states in her

affidavit that Voccola told an older male sergeant "[to] just retire. . . . Get out of here, you're absolutely useless." Voccola denies making the latter two statements; his moving papers do not deny the "women libbers" remark. The parties present no other evidence that corroborates or disproves whether Voccola made the two other statements. Consequently, the court finds that these remarks, if determined to be true, could allow a reasonable factfinder to conclude—in conjunction with other evidence of discriminatory conduct—that Voccola harbored discriminatory motives when interacting with DiCicco.

### 2. *Defendants' Suspension of DiCicco*

Second, the parties sharply disagree about the circumstances surrounding the seminal factual issue in this case: Voccola's suspension of DiCicco for insubordination. DiCicco claims that Voccola had no reasonable basis for imposing the severe punishment of a two-week suspension without pay, particularly when younger male sergeants received only letters of counseling as discipline for committing more serious violations. Defendants counter that DiCicco's utterance of an expletive with reference to Chief Voccola constitutes gross insubordination and justifies the suspension.

The court finds that a reasonable factfinder could conclude that the discriminatory intent factored into Defendants' decision to suspend DiCicco. Simply put, the record undercuts Voccola's proffered rationale for that adverse employment action. In particular, the court finds that the unanimous ruling of the Arbitration Board, which overturned Voccola's decision to suspend DiCicco, strongly supports DiCicco's account of the events leading to her suspension.

The Arbitration Board's ruling essentially rejects Defendants' proffered reasons for why Voccola suspended DiCicco. First, the Arbitration Board's ruling found that DiCicco never cursed directly at the Chief nor did she do so in the presence of police officers other than Dispatcher Colucci. Second, the Board found no evidence to suggest that DiCicco's compliance with the Voccola's directive would have alleviated the traffic congestion, and that his order actually reflected a misunderstanding of the extent of the traffic problem. Third, the Board found no evidence that DiCicco's language, despite its vulgarity, compromised her ability to hold her subordinates accountable to department standards. Finally, the Arbitration Board recognized that the Defendants, before suspending DiCicco, never conducted an adequate investigation which included interviews with DiCicco and the other officers involved. Had Defendants done so, the ruling stated, it is unlikely that the suspension would have occurred.

Based on the Arbitration Board's unanimous ruling, a reasonable factfinder could conclude that Defendants had questionable, if not specious, reasons for DiCicco's suspension. Even the arbitrator selected by the police department chose not to adopt Defendants' explanation for the suspension. Moreover, Defendants do not dispute that two other sergeants received only a "letter of counseling" for falling asleep on duty and allowing the department to become dark during the midnight shift. Accordingly, because DiCicco has presented sufficient evidence that Defendants' rationale for her suspension is false, this court finds that a reasonable factfinder could infer that an improper motive animated Voccola's decision to suspend DiCicco.[3]

---

**3.** The court briefly notes that a triable issue also exists regarding DiCicco's allegation that Voccola made a deliberate effort to hold her to a higher standard than her younger, male sergeants. DiCicco's affidavit states that

In sum, the court finds that factual disputes regarding the discriminatory comments allegedly uttered by Voccola as well as Defendants' proffered reasons for suspending DiCicco preclude summary judgment on the Title VII and ADEA claims. A reasonable factfinder could infer from this record that Defendants' adverse treatment of DiCicco was the product of age or sex discrimination, and that Defendants' proffered nondiscriminatory reason for her suspension was false. Thus, the court denies Defendants' Motion for Summary Judgment with respect to DiCicco's sex and age discrimination claims.

## II. DiCicco's Equal Protection Claim

### A. Applicable Law

■ Defendants also move for summary judgment on DiCicco's equal protection claim. The Equal Protection Clause protects similarly situated individuals who are selectively treated differently due to a malicious or bad faith intent to injure. See Village of Willowbrook v. Olech, 528 U.S. 562, 564, 120 S.Ct. 1073, 1074, 145 L.Ed.2d 1060 (2000). This type of equal protection claim is reviewed under rational basis scrutiny. Id. A decision is considered irrational if the public entity acts with "no legitimate reason for its decision." Crowley v. Courville, 76 F.3d 47, 52–53 (2d Cir.1996).

### B. Analysis

■ For the same reasons discussed at length in Part I, the court finds that genuine issues of material fact preclude summary judgment with respect to DiCicco's equal protection claim. Based on this record, a reasonable factfinder could determine that Defendants targeted DiCicco for adverse treatment for two illegitimate reasons: (1) Chief Voccola disliked DiCicco because she refused to overlook his son's legal transgressions; and/or (2) Chief Voccola disliked DiCicco because she was an older female. In either case, the factual record discussed supra could enable a reasonable factfinder to infer that the Defendants made the conscious decision to mistreat and injure DiCicco. Consequently, the court denies Defendants' Motion for Summary Judgment with respect to DiCicco's equal protection claim.

## III. Voccola's Claim of Qualified Immunity

### A. Applicable Law

■■ Finally, Voccola moves in his individual capacity for summary judgment on DiCicco's equal protection claim, contending that he is entitled to qualified immunity for damages under 42 U.S.C. § 1983. Public officials are entitled to such immunity in their individual capacities "for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). In determining whether such a qualified immunity exists, the court focuses upon the "objective reasonableness of an official's conduct, as measured by reference to clearly established law." Id. It is established law that government officials violate the Equal Protection Clause when their actions are motivated by a malicious or bad faith intent to injure another. See,

---

Lieutenant Arsenault scrutinized her work more carefully than her fellow sergeants. As discussed above, there is substantial evidence of discriminatory treatment, particularly Defendants' suspension of DiCicco. In contrast, Defendants deny that DiCicco was singled out for any reason, and that Lieutenant Arse-

nault's review of her work was part of a larger effort to increase the professionalism of the office. Defendants have submitted documentary evidence in their moving papers indicating that other sergeants were subject to the same level of scrutiny. DiCicco, however, denies the authenticity of these documents.

*e.g., LeClair v. Saunders,* 627 F.2d 606, 611 (2d Cir.1980).

### B. *Analysis*

■ For the same reasons articulated in Parts I and II, the court finds that a factfinder must resolve issues of material fact before the court may render its ruling on Voccola's claim of qualified immunity. As discussed *supra,* a genuine factual dispute exists as to why Defendants suspended DiCicco. If the factfinder determines that Voccola suspended DiCicco in bad faith for refusing to overlook Voccola's son's illegal conduct, that would constitute an equal protection violation. Such a finding of improper motive would defeat a claim of qualified immunity. *Crawford–El v. Britton,* 523 U.S. 574, 594–95, 118 S.Ct. 1584, 140 L.Ed.2d 759 (1998). Consequently, the court denies Defendants' Motion for Summary Judgment on Voccola's claim of qualified immunity.

### CONCLUSION

For the reasons set forth above, Defendants' Motion for Summary Judgment [Doc. # 20] is DENIED in its entirety.